Susan J. Olson, SBN 152467
E-mail: susan.olson@bullivant.com
C. Todd Norris, SBN 181337
E-mail: todd.norris@bullivant.com
BULLIVANT HOUSER BAILEY PC
601 California Street, Suite 1800
San Francisco, California 94108-2823
Telephone:  (415) 352-2700
Facsimile:   (415) 362-2701

Attorneys for Plaintiff the Board of Trustees
for the Laborers Health and Welfare Trust
Fund For Northern California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| The BOARD OF TRUSTEES for the LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>Plaintiff,<br><br>v.<br><br>JEANNE L. HILL, an individual, and DOES 1-10, inclusive,<br><br>Defendants. | Case No.: 07-5849 CW<br><br>**PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT**<br><br>Date:    January 31, 2008<br>Time:   2:00 p.m.<br>Dept.:   Courtroom 2/4th Floor – Oakland<br>Judge:  Claudia Wilken |

Plaintiff THE BOARD OF TRUSTEES FOR THE LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA ("Trust Fund") hereby submits the following memorandum of points and authorities in opposition to defendant's Rule 12(b)(6) Motion to Dismiss.

### I. DEFENDANT'S MOTION SHOULD BE DENIED

In brief, defendant's motion should be denied for the following reasons: (1) the make-whole doctrine does not apply because it has been negated by the parties' agreement; (2) even if the make-whole doctrine did apply, there would still remain triable issues that could not

1
PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS COMPLAINT

properly be determined on a motion to dismiss; (3) according to controlling Ninth Circuit authority, unjust enrichment is a viable theory of recovery under ERISA; (4) whether plaintiff's second cause of action is styled a cause of action for a "constructive trust" or for "declaratory relief" (seeking a declaration that Hill holds money and/or assets in trust for plaintiff), it still states facts sufficient to constitute a cause of action; and (5) even if plaintiff's second cause of action is not considered to be a separate cause of action, the Court is free to construe it as a viable prayer for relief, rather than dismissing it.

In the alternative, should the Court determine that any of defendant's arguments have merit, plaintiff hereby requests leave for plaintiff to amend its complaint, in order to correct any perceived deficiencies, including, but not limited to, perfecting its allegations in support of the imposition of a constructive trust over money and/or assets that belong to the Trust Fund, but which defendant has wrongfully converted to her own use.

## II. FACTUAL BACKGROUND

In December 2002, while Defendant Jeanne L. Hill was a participant in the Trust Fund's Health and Welfare Plan ("the Plan"), she was hospitalized for surgery. A couple of weeks later, Hill was hospitalized again for surgery due to complications arising from the first surgery. According to Hill, her second surgery would not have been necessary but for her doctor's negligence. In addition to paying for Hill's first surgery, the Trust Fund paid benefits on behalf of Hill for her second surgery in the amount of $167,767.

Pursuant to the terms of the Plan, by paying Hill's medical expenses for the second surgery, the Trust Fund obtained an automatic lien upon any recovery by Ms. Hill against her doctor as a result of her doctor's alleged negligence. In fact, as a condition precedent to paying Hill's medical bills, the Plan explicitly required Hill to agree to reimburse the Trust Fund out of any such proceeds, and to give priority to the Trust Fund in allocating those proceeds. Consequently, the Trust Fund had an automatic lien in the amount of $167,767.00 on Hill's subsequent recovery against her doctor.

After settling her claims against her doctor for $230,000.00, however, instead of honoring her promise under the explicit terms of the Plan, Hill pocketed the entire $230,000.00

for herself, apparently using the money to purchase a new house. Thus, by wrongfully refusing to honor the Plan's conditions precedent (which she agreed to prior to having her medical bills paid), Ms. Hill has now received an ill-gotten windfall.

A portion of the money Hill received belongs to the Trust Fund, which would otherwise hold that money in trust for other Plan participants and their dependents, enabling them to obtain similar necessary and/or life-saving medical treatment. Thus, Hill's undeserved windfall has injured not only the Plan, but the public at large by misappropriating money that would otherwise secure the financial integrity of the Plan, which is depended upon by its participants and their dependents who might otherwise have to turn to public assistance in a time of need.

### III. PROCEDURAL HISTORY AND BACKGROUND

In 1996, the California Court of Appeal, held that reimbursement actions such as the one at issue in this case were preempted by ERISA and therefore belonged in federal court. *Employee Retirement Jefferson-Pilot Life Ins. Co. v. Krafka* (1996) 50 Cal.App.4th 190. In 2000, however, the U.S. Supreme Court called *Jefferson-Pilot* into question by suggesting that such claims for reimbursement were more properly brought in state court. *Great-West Life & Annuity Ins. Co. v. Knudson* (2002) 534 U.S. 204. That is how the Ninth Circuit interpreted the *Great-West* case when it held that an action seeking to enforce the reimbursement clause of an ERISA plan was outside of ERISA's preemption provision and its civil enforcement provisions, and thus should be remanded back to state court. *Providence Health Plan v. McDowell*, 385 F.3d 1168, 1172-73 (9th Cir. 2004).

Thus, when the Trust Fund filed its action against Hill in state court in 2005, it was attempting to follow the most current and binding authority on the subject (*McDowell*). However, while the Trust Fund's action against Hill was pending in state court, the U.S. Supreme Court issued its decision in *Sereboff v. Mid Atlantic Medical Services, Inc.*, ___ U.S. ___, 126 S.Ct. 1869 (2006), which held that a plan fiduciary may enforce its reimbursement provisions by seeking equitable relief in federal court. *Id.* at 1874. Accordingly, on appeal, guided by the *Sereboff* decision, the California Court of Appeal relied upon the "complete preemption" doctrine to hold that state court subject matter jurisdiction over the Trust Fund's

claim against Hill is displaced by ERISA. *Totten v. Hill* (2007) 154 Cal.App.4th 40, 50 - 52. The Court of Appeal therefore vacated the Superior Court's judgment and dismissed the action based on a lack of subject matter jurisdiction.[1] *Id.* at 54. In reaching its decision, the Court noted that "the Trustees could have pursued their reimbursement claim in federal court . . ." *Id.* at 53.

Accordingly, with the Trust Fund's claim against Hill having been dismissed by the California Court of Appeal, not on the merits, but based on complete preemption of ERISA, and with California state and federal courts now in agreement concerning the correct forum for adjudicating the claim, the Trust Fund has filed this claim against Hill in federal court, seeking to vindicate its rights under the terms of the subject ERISA Plan.

## IV. THE "MAKE-WHOLE" DOCTRINE DOES NOT BAR PLAINTIFF'S COMPLAINT

### A. Hill Misconstrues Cases That Have No Bearing On The Present Dispute

As Hill concedes, where a plan "ha[s] specific language creating priority of its lien," the make-whole doctrine does not apply. (Motion at 8:6-8) Here, the Plan language, giving explicit *"priority"* to the Trust Fund's lien as a *"condition precedent"* to paying benefits on behalf of Hill, negates the make-whole doctrine. As pleaded at paragraph 11 of the complaint, Article X, Section 8 of the Health and Welfare Plan provides as follows:

> If an Eligible Individual has an illness, injury, disease or other condition for which a third party may be liable or legally responsible by reason of an act or omission, or insurance coverage of such third party, the Fund will have an automatic lien upon any recovery against the third party for benefits paid by the Fund as a result of such illness, injury, disease or other condition. All Eligible Individuals, *as a condition precedent* to entitlement to benefits from the Fund, must agree in writing to reimburse the Fund for any payments made by the Fund on account of hospital, medical or other expenses in connection with, or arising out of, that injury, illness, disease or other condition. The reimbursement will be made out of *any proceeds received* by way of judgment, arbitration award, settlement or otherwise in connection with, or arising out of, any claim for a right to damages by the Eligible Individual against the third

---

[1] Thus, contrary to Hill's disingenuous allegations, nothing was or could have been decided by the state courts concerning this dispute other than the fact that they lacked subject matter jurisdiction. It is, therefore, improper for Hill to cite the Court's opinion in the California action to establish a "fact" that has not been conclusively decided by any court of competent jurisdiction, especially where the alleged "fact" was not even taken from a finding of fact, but from mere dicta that plainly was not essential to any final or appealable order or judgment.

party, his insurance carrier, guarantor or other indemnitor, or by reason of uninsured or under-insured motorist coverage of the Eligible Individual, or any other source of third party recovery. The agreement will require all Eligible Individuals to prosecute the claim for damages diligently; ***to give priority to the reimbursement of the Fund in the allocation of the proceeds of any recovery***, to cooperate and assist the fund in obtaining reimbursement for the payments, to execute any documents necessary to secure reimbursement; and to refrain from any act or omission that might hinder such reimbursement, and may contain any other provision as the Fund may reasonably require. [Emphasis Added.]

Hill relies on the *Barnes* case[2] to support her contention that the above language is insufficient to overcome the make-whole doctrine. Hill's reliance on *Barnes* is improper, however, for two separate and independent reasons. First, in *Barnes,* contrary to Hill's gross mischaracterization, the Ninth Circuit did not conclude that the plan language before it was inadequate to negate the make-whole doctrine. Rather, the Ninth Circuit refused to displace the make-whole doctrine, *"despite the [plan] language"* because in *Barnes*, unlike the present case, *the plan had not paid any benefits to anyone whatsoever. Id.* at 1396.

Yet, at page 8 of her brief, Hill incorrectly informs this Court that "[t]he Ninth Circuit held [that the plan language at issue in *Barnes*] was **general language and not sufficient enough to opt out of the make whole doctrine.**" [Emphasis in original.] Hill's contention is simply false. In *Barnes,* the plan argued that the make-whole doctrine did not apply because the plan's subrogation clause stated that if the plan made payment, it would be subrogated "to all rights of recovery." *Id.* at 1396. Contrary to Hill's characterization of *Barnes,* the Ninth Circuit in fact conceded that the very same "all rights of recovery" language had been found by courts in other jurisdictions to be sufficient to override the make-whole doctrine. *Id.*

The reason the Ninth Circuit refused to displace the make-whole rule in *Barnes*, however, had nothing at all to do with the sufficiency of the plan language. Rather, the Ninth Circuit refused to displace the make-whole doctrine in *Barnes,* ***"despite"*** the plan language because the plan had neither *made any payment,* nor assisted Barnes in prosecuting her case against the tortfeasor:

Under these circumstances, when the insurance company makes

---

[2] *Barnes v. Independent Auto. Dealers Ass'n of California Health and Welfare Benefit Plan,* 64 F.3d 1389 (9th Cir. 1995).

> no payment to the injured insured for covered expenses, ***and places all of the cost and risk of seeking recovery from a third party on the injured insured, the make-whole rule remains in place despite the "all rights" language in the contract.*** [*Id.* at 1396; Emphasis added.]

Here, unlike the situation in *Barnes,* it is undisputed that Hill's medical bills were paid by the Trust Fund, a fact that is itself sufficient to take this case outside of the *Barnes* holding.

In addition, even if the Ninth Circuit *had* ruled that the plan language in *Barnes* was insufficient to displace the make-whole doctrine, such a ruling would have absolutely no bearing on the present case because the plan language at issue in this case (quoted above) is materially different from, and bears no resemblance whatsoever to, the plan language before the court in *Barnes*. In *Barnes,* the language before the court was a subrogation clause, stating that if the plan made a payment, it would be "subrogated to all rights of recovery." *Id.* at 1396. Unlike the present case, nowhere did the plan language in *Barnes* purport to give "priority" to the reimbursement of the plan. By contrast, the plan language at issue in this case explicitly states that Hill is required to "***give priority*** to the reimbursement of the Fund in ***the allocation of the proceeds of any recovery***." Complaint, Para. 11 (emphasis added).

Indeed, the plan language at issue in this case is materially different from the language at issue in each of the cases cited by Hill. Hill simply uses those cases in a vain attempt to prop up a motion that obviously has no merit. Not one of the cases cited in Hill's brief contained language that gave the plan "priority" with respect to allocation of "any recovery." *See, e.g., Cagle v. Bruner*, 112 F.3d 1510, 1521 (11th Cir. 1997)(giving the plan nothing more than "the right to be reimbursed"); *Copeland Oaks v. Haupt*, 209 F.3d 811, 813 (6th 2000)(plan language "failed to establish [the Plan's] priority right"); and *Providence Health Systems-Wasthington v. Bush,* 461 F.Supp.2d 1226, 1234 (W.D.Wash. 2006)(stating only that "you will need to reimburse the plan . . .").

**B.    The Language In Plaintiff's Plan Is Sufficient To Displace The "Make-Whole" Doctrine**

At pages 8 and 9 of her brief, Hill purports to cite this Court to two cases that supposedly reference "the specific language ***necessary*** to defeat a presumption of the make whole doctrine."

(Motion at 8:27 - 9:7 (citing *Providence Health Systems-Washington v. Bush,* 461 F.Supp.2d 1226, 1234 (W.D.Wash. 2006) and *Beveridge v. Benefit Inc.,* 2006 WL 2052696 (D.Ariz. July 21, 2006))(Emphasis added). Yet, those cases merely discuss language that is **sufficient** to overcome the make-whole doctrine. Neither case states anywhere what language, if any, is **necessary** to overcome the doctrine. Thus, to say that those cases mandate specific language "necessary" to overcome the make-whole doctrine is nothing short of an astonishingly gross mischaracterization.

In fact, far from supporting Hill's position, the *Providence* case establishes that the Trust Fund's Plan language is more than sufficient to negate the make-whole doctrine. In the *Providence* case, the Court noted that language to the effect that the plan had "first priority" and was to be paid from "all amounts recovered" was adequate to negate the make-whole doctrine. *Providence,* 461 F.Supp.2d at 1235. Here, the Plan not only explicitly states that it is to be reimbursed out of "any proceeds received," but also that the participant, as a condition precedent to receiving benefits, must "give priority to . . . the Fund" with respect to the allocation of "any recovery" against a third party.

Thus, this case is very similar to two cases that although discussed by the *Providence* court are conspicuously absent from Hill's brief: *Moore v. CapitalCare, Inc.,* 461 F.3d 1, 10 (D.C. 2006)(make-whole doctrine inapplicable where plan provided, "Participant shall pay the Corporation *all amounts* recovered by suit, settlement, or otherwise . . ."); and *Administrative Committee of Wal-Mart Stores, Inc. v. Shank,* 2006 WL 2546797, *5 (E.D.Mo. 2006)(make-whole doctrine displaced where plan in question made clear that "the plan has first priority with respect to its right to reduction, reimbursement and subrogation.") Similar to both of the above cases, the plan language at issue in this case explicitly gave the Trust Fund "priority" over "any proceeds" Hill recovered from her doctor.

C. **Assuming That The Make Whole Doctrine Did Apply Here, Triable Issues Preclude Dismissal of The Trust Fund's Action**

Hill concedes that on a motion to dismiss, the alleged "defect must be on the face of the complaint or in matters capable of judicial notice." (Motion at 6:17-20) Yet, the first "fact"

Hill relies on to make her motion is that she "has not been fully compensated for her injuries . . ." (Motion at 7:7-9) Hill cites nothing in the complaint, and indeed does not ask the Court to take judicial notice of this "fact," which plainly is not the proper subject of a request for judicial notice. This Court, of course, may not accept as having been conclusively established an alleged "fact" that appears nowhere in the record before it, but only as dicta in an opinion pertaining to another case in which a different court determined that it had no subject matter jurisdiction over the parties' dispute. *Totten v. Hill* (2007) 154 Cal.App.4th 40.

Finally, although Hill voluntarily informs this Court at page 9 of her brief that her medical bills totaled $400,000, she neglects to tell the Court that in addition to the medical bills paid by the Trust Fund, "Blue Cross paid Hill's remaining medical expenses." *Totten v. Hill*, 154 Cal.App.4th 40, 45 n. 3. Indeed, were the issue properly before the Court, the evidence would show a double compensation, regardless of how Hill arbitrarily chooses to characterize the settlement funds she received, which funds are traceable to assets Hill has since acquired, not to any of her medical providers.

### V. PLAINTIFF'S CAUSE OF ACTION FOR UNJUST ENRICHMENT IS VIABLE UNDER ERISA

In arguing that ERISA does not allow a cause of action for unjust enrichment, Hill mischaracterizes the holding in *Pacificare, Inc. v. Martin*, 34 F.3d 834, 836 (9th Cir. 1994). Nowhere in that opinion did the Ninth Circuit hold that ERISA does not permit a recovery based on an unjust enrichment theory. Rather, the Court held, "[t]hus far, Pacificare has not pursued a claim for equitable relief under section 1132(a)(3), and neither party has developed the arguments to support or to reject such a claim." *Id.* at 838. As explained by the subsequent case law, which Hill fails to discuss, the Ninth Circuit "reversed [the district court] on the grounds that Pacificare did not state a cause of action under §1132(a)(3) ***because the complaint invoked Waller[3] and its discussion of federal common law causes of action rather than § 1132(a)(3).***" *Chitkin v. Lincoln National Insurance Company*, 879 F.Supp. 841, 852 (C.D. Cal.

---

[3] *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985 (4th Cir. 1990), *cert. denied*, 498 U.S. 982 (1990).

1995)(emphasis added). Here, the Trust Fund's complaint *does* invoke Section 1132(a)(3) [§502(a)(3)][4] at, *inter alia,* paragraphs 3 and 22 of the complaint, which are incorporated by reference into the Trust Fund's third cause of action for unjust enrichment, at paragraph 27 of the complaint.

*Pacificare* is poignant here only in so far as the Ninth Circuit clearly acknowledged the possibility for the plan to "amend its complaint to bring suit under Section 1132(a)(3) seeking equitable relief to enforce the terms of the plan . . ." *Id.* at 838. The present case, however, more closely resembles *Chitkin* in which the Court discussed *Pacificare*, rejected the notion that ERISA does not permit recovery under an unjust enrichment theory, and allowed the plaintiff to pursue just such a theory:

> In the case at hand, the Ninth Circuit already has . . . . found that the Chitkins would receive a "windfall" in the form of a "double reimbursement" if they were not required to repay Lincoln National for the medical benefits it had extended to them. In fact, the Ninth Circuit found no "plausible justification" for allowing the Chitkins to defeat Lincoln National's reimbursement right. In light of this language in the Memorandum, and the dicta in *Pacificare,* this Court finds that Lincoln National properly may seek restitution in an effort to enforce the terms of the Plan (which expressly provides for reimbursement) and ***to prevent the unjust enrichment*** of the Chitkins. [*Id.* at 852-853; Emphasis added.]

Thus, where a plan contains a reimbursement provision such as the one at issue here, it is entirely appropriate for the Court to permit a cause of action for unjust enrichment in order to prevent a defendant from retaining an unjustified windfall, especially where, as here, Hill induced the Trust Fund into paying her medical bills by promising, *as a condition precedent*, to give the Trust Fund "priority" to "a*ny proceeds received*" as a result of the claim against her doctor (regardless of how she arbitrarily chose to characterize those proceeds).

### VI. PLAINTIFF'S SECOND CAUSE OF ACTION IS A SEPARATE AND VIABLE CAUSE OF ACTION

It can easily be inferred from the Complaint that Hill has possession of funds that never lawfully belonged to her, that she has wrongfully refused to turn those funds over to the Trust

---

[4] Section 502(a)(3) of ERISA, referenced in the Trust Fund's complaint, is codified at 29 U.S.C. § 1132(a)(3).

Fund (the lawful owner), and that she has instead wrongfully converted those funds to her own use. These facts are sufficient to state an equitable cause of action under ERISA, whether for declaratory relief or otherwise, that would entitle the Trust Fund to a constructive trust over the subject funds. *See, e.g., Deirmenjian v. Deutsche Bank, A.G.*, --- F.Supp.2d ---, 2007 WL 4395065, *4 (C.D.Cal. Dec. 14, 2007)(Constructive trust and accounting are . . . available to a plaintiff who prevails, *inter alia,* on a conversion claim). Accordingly, should the Court find merit in defendant's motion with respect to plaintiff's Second Cause of Action, the Trust Fund should be granted leave to amend its complaint in order to state more explicitly the equitable grounds upon which it is entitled to a constructive trust.[5]

## VII. CONCLUSION

For the foregoing reasons, plaintiff respectfully request that defendant's motion be denied in its entirety. In the alternative, should the Court find merit in any of defendant's arguments, plaintiff request that it be granted leave to amend its complaint in order to address any perceived deficiencies.

DATED: January 10, 2008

BULLIVANT HOUSER BAILEY PC

By _____
Susan J. Olson
C. Todd Norris

Attorneys for Plaintiff the BOARD OF TRUSTEES For The LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA

\*\*\*\*\*

6091050.1

---

[5] In any event, plaintiff notes that rather than dismiss its Second Cause of Action, the Court is free to construe it as a request for a particular remedy, not a separate cause of action. *Warfield v. Alaniz*, 453 F.Supp.2d 1118, 1133 (D.Ariz. 2006)("The Court construes the Plaintiff's reference to a constructive trust as a request for a particular remedy, not a separate cause of action.")