**John P. Kelley #168904**
LAW OFFICES OF
**HALKIDES, MORGAN & KELLEY**
833 MISTLETOE LANE
POST OFFICE DRAWER 492170
REDDING, CALIFORNIA 96049-2170
(530) 221-8150
FAX (530) 221-7963
John@Reddinglaw.com

Attorneys for Defendant
JEANNE L. HILL

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND DIVISION

| | |
|---|---|
| THE BOARD OF TRUSTEES for the LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>Plaintiff.<br><br>v.<br><br>JEANNE L. HILL, an individual and DOES 1-10, inclusive,<br><br>Defendants.<br>_____/ | Case No. 07-5849 CW<br><br>[Fed. R. Civ. P., Rule 12(b(6)]<br>[Fed. R. Civ. P., Rule 12(f)]<br><br>DEFENDANT'S REPLY TO PLAINTIFF'S OPPOSITION MOTION TO DISMISS THE COMPLAINT OR IN THE ALTERNATIVE TO STRIKE PORTIONS OF THE COMPLAINT<br><br>DATE:   January 31, 2008<br>TIME:   2:00 p.m.<br>DEPT:   Courtroom 2/4th Floor-Oakland<br>JUDGE:  Claudia Wilken |

**I.**

**INTRODUCTION**

Plaintiff argues the make whole doctrine does not bar its suit as Plaintiff believes its Plan language is sufficient to opt out of the make whole doctrine. Secondly, Plaintiff argues the second cause of action for a constructive trust is valid or should be

1

converted into a remedy. Finally, Plaintiff argues its unjust enrichment cause of action is still viable by attempting to distinguish cases cited by Ms. Hill.

These arguments are without merit. Plaintiff's Plan language is insufficient as a matter of law to opt out of the common fund doctrine. All the Plan language does is create a simple lien. The common fund doctrine itself is never specifically mentioned. With no specific language opting out of the common fund doctrine, it applies to this case and mandates the complaint be dismissed.

II.

## THE MAKE WHOLE DOCTRINE PREVENTS RECOVERY

Without coming out and saying so expressly, Plaintiff concedes, as they must, the make whole doctrine applies in the Ninth Circuit. As the Court stated in *Barnes v. Independent Automotive Dealers Assoc. of CA. Health and Welfare Benefits Plan* (9th Cir. 1995) 64 F.3d 1389, the make whole doctrine "is a general equitable principal of insurance law that, absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." (*Id.* at 1394.) "We adopt as federal common law this generally accepted rule that, in the absence of a clear contract provision to the contrary, an insured must be made whole before an insurer can enforce its right to subrogation." (*Id.* at 1395.) "We would not apply the interpretative make-whole doctrine as a gap filler if the subrogation clause in the Plan's document specifically allowed the Plan the right of first reimbursement out of any recovery *Barnes* was able to obtain even if *Barnes* were not made whole." (*Ibid.*)

The issue then becomes has the Plaintiff here adopted a **clear contract provision** opting out of the make-whole doctrine. In interpreting the language of the Plan, the Court must interpret the language consistent with the principals that ERISA is

2

remedial legislation which should be liberally construed in favor of protecting participants in employee benefit plans (*Id.* at 1392) and must construe ambiguities in an ERISA Plan against the drafter and in favor of the insured. (*Id.* at 1393.) As the Court explained in *Cagle v. Bruner* (11th Cir. 1997) 11 F.3d 1510: "…if the Fund wants to escape the make whole doctrine, it need only include language in the Plan explicitly providing the Fund with the right to first recovery, even when a participant or beneficiary is not made whole." (*Id.* at 1522.) Without explicit plain language, the make whole doctrine applies. (*Ibid.*) As the Court explained in *Hartendower v. Electrical Specialties Co,* (N.D.Ill 1997) 977 F.Supp 875 "employees should unequivocally know if their plan disallows application of the make-whole rule. Congress promulgated ERISA to insure the continued well-being and security of employees and their dependents whom welfare plans affect. Plans should give employees plain information regarding the administration of their plans…Thus, although ERISA does not require that an employee welfare plan follow the make-whole doctrine, it should **plainly** state any intention not to do so." (*Id.* at 883.)

## A. PLAINTIFF'S PLAN HAS NOT OPTED OUT OF THE MAKE-WHOLE DOCTRINE

Despite an exhausted search, it does not appear that either party has found a case which has interpreted the exact same language as that in the Plaintiff's Plan. Nevertheless, there are cases which have similar language insufficient to override the make whole doctrine. In *Copeland Oaks v. Haupt* (6th Cir. 2000) 209 F.3d 811, 813, the subrogation clause of a ERISA Plan provided "these rights provide the Plan with a **priority over *any* funds** paid by a third party to a covered person relative to the injuries or sickness, including a priority over any claim for non-medical-dental charges, attorney fees, or other costs and expenses." The Court found this language was not sufficiently clear to reject the make whole doctrine because it did not specifically

establish priority rights over any partial recovery.  Plus, despite the language used of "priority over any funds" and "priority" over other costs of expenses, the make whole doctrine was still applicable.  (*Id.* at 813-814.)

In *King v. Pan American Life Insurance Co* (N.D.Ga 1996) 998 F.Supp. 1455 the ERISA Plan policy stated: "If the covered person collects **any sums for damages** from the third party, the covered person will be liable to us for the benefits We paid." (*Id.* at 1456.)  The Court found this language was insufficient to overcome the make whole doctrine because: "The subrogation clause does not state that (1) the make whole doctrine shall not apply; (2) the fund/plan has the right to recover any sums collected by a covered person even if the covered person has not been made whole; or (3) the fund/plan is entitled to reimbursement from any recovery even if the recovery does not fully compensate the covered person for her injury." (*Id.* at 1459.)

In *Cagle*, supra, 112 F.Supp. at 1513, the Plan stated: "I (we) agree to reimburse the Plan in full from the proceeds of **any recovery** received by me (us) because of such injury or sickness."  Once again, the Court found this language was insufficient to overcome the make whole doctrine because there is no specific rejection to the make whole doctrine in the language.

The language in Plaintiff's Plan is very similar to that of *Copeland Oaks v. Haupt*, supra.  The language highlighted in Plaintiff's opposition brief states the Plan has "**priority** to the reimbursement of the fund and the allocation of the proceeds of **any recovery**…" (Opposition brief page 5, the complaint at paragraph 11.)  This language is very similar to *Copeland Oaks'* plan that provide the plan with a "**priority over any funds**" and was found to be insufficient to opt out.  With the operative language being almost identical, this Court should find Plaintiff's Plan has not opted out of the make whole doctrine.  As in *King v. Pan American Life Insurance Co.,* supra,

Plaintiff's language does not state the make whole doctrine shall not apply; does not state the plan has the right to recover any sum collected by a covered person even if the covered person has not been made whole and it does not state the plan is entitled to reimbursement from any recovery even if the recovery does not fully compensate the covered person for her injuries. As Plaintiff's Plan language must be interpreted against Plaintiff as the drafter and liberally constructed in favor of Defendant Hill as the beneficiary for whom ERISA was designed to protect, this Court should find Plaintiff's Plan language does not opt out of the make whole doctrine.

## B. PLAINTIFF'S PLAN CONTAINS ONLY A GENERAL LIEN PROVISION

If read closely, Plaintiff's Plan language, as quoted in paragraph 11 of the complaint, does not even contain a subrogation provision, let alone clear and explicit language opting out of the make whole doctrine. For this reason, the complaint fails to state a cause of action and should be dismissed.

Dissecting the policy language, the Plan only creates a general lien on third party proceeds, not the right to first priority. **The plan language requires participants to sign a separate subrogation agreement and nothing more.**

The Plan states:

> If an eligible individual has an illness, injury, disease or other condition for which a third party may be liable or legally responsible by reason of an act or omission, or insurance coverage of such third party, the fund will have **an automatic lien** upon any recovery against a third party for benefits paid by the fund as a result of such illness, injury, disease or other condition.

This opening sentence simply states Plaintiff will have a lien on any recovery, it does not provide any priority for that lien or waiver of the make whole doctrine.

The Plan language continues:

> All eligible individuals, as a condition precedent to entitlement to benefits from the fund, **must agree in writing to reimburse the fund** for any payments made by the fund on account of hospitals, medical or other expenses in connection with, or arising out of, that injury, illness, disease or other condition.

Here is where the Plan language starts talking about the signing of **a separate agreement** to reimburse the Plaintiff for any payments made by Plaintiff. It is important to note the Plan **does not** say the Plaintiff must be reimbursed, but rather some new writing that contains reimbursement language must be signed.

The Plan language continues:

> The reimbursement will be made out of any proceeds received by way of judgment, arbitration award, settlement or otherwise in connection with, or arising out of, any claim for a right to damages by the eligible individuals against a third party, his insurance carrier, guarantor, or other indemnitor, or by reason of uninsured or under-insured motorist coverage of the eligible individual, or any other source of third party recovery.

Continuing to talk about this separate agreement, this portion is simply standard language stating the reimbursement shall come from any proceeds obtained from various sources.

Finally the Plan states:

> The <u>agreement</u> will require all eligible individuals to prosecute the claim for damages diligently; to give priority to the reimbursement of the fund in the allocation of the proceeds of any recovery, to cooperate and assist the fund in obtaining reimbursement for the payment, to execute any documents necessary to secure reimbursement; and to refrain from any act or omission that might hinder such reimbursement, and may contain any other provision as the fund may reasonably require.

This is the key language. Once again, the provision does not state the Plan **currently** has priority to the reimbursement from any proceeds recovered. Instead the

6

language states a separate and new **agreement** which the beneficiary is required to sign shall contain language giving priority reimbursement to Plaintiff.

Interpreting the paragraph strictly against the drafter (Plaintiff) all this provision does is give Plaintiff "an automatic lien" against any recovery (the first sentence). The rest of the paragraph regarding priority of reimbursement are things that are suppose to be included in some **other agreement** the Plan beneficiaries are suppose to sign as a condition precedent to Plaintiff paying for medical expenses and nothing more. In other words, the Plan contains no subrogation agreement and no priority whatsoever. It merely calls for another agreement to be entered into which contains that language.

The Plan only provides for a lien upon recovery. There should be no dispute the language "automatic lien upon any recovery" is not sufficient to overcome the make whole doctrine. Therefore, the only language cited in the complaint which provides Plaintiff with any right of recovery at all clearly does not overcome the make whole doctrine and is applicable in this case.

### III.

### THE COURT SHOULD NOT RESORT TO FEDERAL COMMON LAW WHERE A SPECIFIC STATUTORY REMEDY IS AVAILABLE

Plaintiff does not appear to dispute the holding of *PacifiCare* v. *Martin* (9th Cir. 1994) 34 F.3d 834 that federal common law cause of action for unjust enrichment cannot be maintained when a specific statutory remedy is available. Rather, Plaintiff appears to be arguing their third cause of action for unjust enrichment is not based on federal common law, but rather it is a statutory ERISA cause of action seeking equitable restitution pursuant to a unjust enrichment theory. The problem with this argument is Plaintiff already has a cause of action for equitable restitution under ERISA, the first cause of action in the complaint. Thus Plaintiff is basically admitting

the third cause of action is merely redundant of the first cause of action and thus unnecessary.

Plaintiff does not seem to disagree with the statements in *PacifiCare v. Martin*, supra, that: "….the Ninth Circuit has expressly refused to create federal common law causes of action under ERISA." (*PacifiCare v. Martin*, supra, 34 F.3d at 836.) Instead Plaintiff argues the third cause of action for unjust enrichment is brought pursuant to the ERISA statutory scheme, specifically, § 1132(a)(3).  This however then begs the question what is Plaintiff's first cause of action which merely states it is for "equitable restitution under ERISA" and then goes on to specifically cite § 1132(a)(3).  This is simply part of the problem that has arisen from the Plaintiff's poorly drafted complaint. The first cause of action merely slaps on the label "equitable restitution" without mentioning any specific equitable remedy or theory.  The second cause of action asks for the imposition of a constructive trust, which is not a cause of action, but rather a remedy.  Finally there is the third cause of action for the equitable theory of unjust enrichment that does not seek to impose any trust on the allegedly improperly obtained funds.  As Plaintiff has now impliedly conceded the third cause of action for unjust enrichment cannot stand on its own, but must be one subsumed under the ERISA first cause of action, it appears Plaintiff's entire complaint is really just one cause of action, not the three causes of action separately plead.  Thus, if Plaintiff's complaint survives the make whole doctrine set forth above, Plaintiff should be given leave to amend so they can attempt to draft a proper complaint.

## IV.

## CONCLUSION

Plaintiff's arguments concerning the applicability of the make whole doctrine, the viability of cause of action two for constructive trust, and for unjust enrichment are

without merit. Pursuant to cases cited above and in the moving papers, the Ninth Circuit has adopted the make whole doctrine. Pursuant to this doctrine, a beneficiary is not required to reimburse the health insurer until he or she has received full compensation for his or her injuries. In the present case, the make whole doctrine applies. Despite Plaintiff's contentions it is entitled to priority, the language found in the Plan is not sufficient to opt out of the make whole doctrine.

In the case of *Cagle v. Bruner,* the Court held the provisions requiring subrogation to the Plan and reimbursement from proceeds of any recovery was not sufficient to opt out of the doctrine. As noted above, language must be specific and contain a clear statement the beneficiary is giving up his or her rights. In the present case, the Plan language is simply not clear enough to result in the waiver of this important right. All the language does is create a general lien and call for the signing of a separate agreement. As an ambiguity should be resolved in Ms. Hill's favor, as Plaintiff was the drafter, the make whole doctrine applies and bars recovery.

Based on the foregoing and the moving papers, Ms. Hill respectfully requests this motion be granted in its entirely or in the alternative whatever relief the Court deems proper.

DATED:  January 17, 2008            HALKIDES, MORGAN & KELLEY


                                    BY:   /s/ JOHN P. KELLEY
                                          JOHN P. KELLEY
                                          Attorney for Defendant
                                          JEANNE L. HILL