IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES for the LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>          Plaintiff,<br><br>     v.<br><br>JEANNE L. HILL,<br><br>          Defendant._____/ | No. C 07-05849 CW<br><br>ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

Defendant Jeanne L. Hill moves to dismiss the complaint in its entirety. Plaintiff Board of Trustees for the Laborers Health and Welfare Trust Fund for Northern California opposes Defendant's motion. The matter was taken under submission on the papers. Having considered all of the materials submitted by the parties, the Court grants Defendant's motion in part and denies it in part.

                              BACKGROUND

Plaintiff oversees the Laborers Health and Welfare Trust Fund (the Fund), which finances an employee benefit plan (the Plan) in which Defendant was a participant at all relevant times. On or about December 10, 2002, Defendant underwent a surgical procedure. Just over two weeks later, Defendant underwent a second surgical

procedure due to complications arising from the first surgery. Pursuant to the Plan, the Fund paid "no less than" $167,767 on Defendant's behalf as benefits for healthcare costs incurred in connection with the second surgery. The Plan provides that these benefits were subject to the following conditions:

> If an Eligible Individual has an illness, injury, disease or other condition for which a third party may be liable or legally responsible by reason of an act or omission, or insurance coverage of such third party, the Fund will have an <u>automatic lien upon any recovery against the third party</u> for benefits paid by the Fund as a result of such illness, injury, disease or other condition. All Eligible Individuals, as a condition precedent to entitlement to benefits from the Fund, must agree in writing to reimburse the Fund for any payments made by the Fund on account of hospital, medical or other expenses in connection with, or arising out of, that injury, illness, disease or other condition. The reimbursement will be made out of any proceeds received by way of judgment, arbitration award, settlement or otherwise in connection with, or arising out of, any claim for a right to damages by the Eligible Individual against the third party, his insurance carrier, guarantor or other indemnitor, or by reason of uninsured or under-insured motorist coverage of the Eligible Individual, or any other source of third party recovery. The agreement will require all Eligible Individuals to prosecute the claim for damages diligently; <u>to give priority to the reimbursement of the Fund in the allocation of the proceeds of any recovery</u>, to cooperate and assist the fund [sic] in obtaining reimbursement for the payments, to execute any documents necessary to secure reimbursement; and to refrain from any act or omission that might hinder such reimbursement, and may contain any other provision as the Fund may reasonably require.

Compl. ¶ 11 (emphasis added).

Defendant sued the doctor who performed the first surgery for medical malpractice.[1] She settled this lawsuit for $230,000, an

---

[1] The facts in this paragraph are not contained in the complaint, which alleges simply that Defendant "is actively pursuing, or has received a monetary recovery in connection with, a lawsuit against one or more third parties for personal injuries

2

amount which she claims represents compensation exclusively for her pain and suffering and lost wages.[2]  She has not reimbursed the Fund for the sum it paid toward her medical expenses because, according to her, the settlement did not include compensation for medical costs.

Plaintiff claims that, pursuant to the Plan, the Fund has a lien on Defendant's settlement proceeds, and it demands reimbursement.  Plaintiff first sued Defendant in state court alleging breach of contract.  The trial court found that it had subject matter jurisdiction over the action, and granted summary judgment against Plaintiff on the merits of its claim.  On appeal, however, the California Court of Appeal held that Plaintiff's state-law contract claim was preempted by the Employee Retirement Income Security Act (ERISA), and thus the trial court lacked subject matter jurisdiction over the action.  The appeals court vacated the lower court's judgment and dismissed the case.  Totten v. Hill, 154 Cal. App. 4th 40, 54 (2007).

Plaintiff subsequently brought the present lawsuit.  In its complaint, Plaintiff asserts three causes of action against Defendant: 1) equitable restitution under § 502(a)(3) of ERISA, 29 U.S.C. § 1132(a)(3), for Defendant's violation of the Plan's terms; 2) imposition of a constructive trust; and 3) unjust enrichment.

---

sustained as a result of the Second Surgery."  Compl. ¶ 15.  However, the Court includes these additional facts here to provide a fuller explanation of the underlying events.  They are not necessary to the Court's holding.

[2]Defendant claims to have incurred almost $400,000 in healthcare costs.  However, it is not clear what portion, if any, of this sum Defendant paid out-of-pocket.

3

LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a). When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. See Bell Atl. Corp. v. Twombly, __ U.S. __, 127 S. Ct. 1955, 1964 (2007).

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). Although the court is generally confined to consideration of the allegations in the pleadings, it may take judicial notice of facts not reasonably subject to dispute, either because they are generally known, are matters of public record or are capable of accurate and ready determination. See Intri-Plex Techs., Inc. v. Crest Group, Inc., 499 F.3d 1048, 1052 (9th Cir. 2007). However, "[o]n a Rule 12(b)(6) motion to dismiss, when a court takes judicial notice of another court's opinion, it may do so 'not for the truth of the facts recited therein, but for the existence of the opinion, which is not subject to reasonable dispute over its authenticity.'" Lee v. City of Los Angeles, 250 F.3d 668, 690 (9th Cir. 2001) (quoting S. Cross Overseas Agencies, Inc. v. Wah Kwong Shipping Group Ltd., 181 F.3d 410, 426-27 (3rd Cir. 1999)).

When granting a motion to dismiss, the court is generally

4

required to grant the plaintiff leave to amend, even if no request to amend the pleading was made, unless amendment would be futile. Cook, Perkiss & Liehe, Inc. v. N. Cal. Collection Serv. Inc., 911 F.2d 242, 246-47 (9th Cir. 1990). In determining whether amendment would be futile, the court examines whether the complaint could be amended to cure the defect requiring dismissal "without contradicting any of the allegations of [the] original complaint." Reddy v. Litton Indus., Inc., 912 F.2d 291, 296 (9th Cir. 1990). Leave to amend should be liberally granted, but an amended complaint cannot allege facts inconsistent with the challenged pleading. Id. at 296-97.

DISCUSSION

I.   Plaintiff's ERISA Claim

Defendant argues that the "make-whole" doctrine bars Plaintiff's ERISA claim. Pursuant to this federal common law rule, "absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole." Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health and Welfare Benefit Plan, 64 F.3d 1389, 1394 (9th Cir. 1995). The Barnes court defined subrogation as "the insurer's right to be put in the position of the insured, in order to recover from third parties who are legally responsible to the insured for a loss paid by the insurer." While the make-whole rule protects the insured, it "does not permit an insured to recover from the tort-feasor and from her insurance company if the recovery would exceed the damages." Id. at 1395. Thus, "[i]f the insurer paid the insured the full amount

5

of his claim and the insured then recovers from the third party, the insured must reimburse the insurer any amount recovered in excess of his own claim." Id. at 1392.

The make-whole doctrine is a federal common-law rule of contract interpretation. It is a "gap-filler" that applies only if the contract's subrogation clause is silent with respect to the insured's right to be made whole before the insurer may obtain reimbursement for benefits paid. Thus, the parties may abrogate the make-whole rule by providing that the insurer has "the right of first reimbursement out of any recovery the insured [is] able to obtain, even if [the insured is] not made whole." Id. at 1395.

Here, the Plan provides that, if a third party is liable for the participant's injury, the Fund "will have an <u>automatic lien upon any recovery</u> against the third party for benefits paid," and that reimbursement for benefits paid "will be made out of <u>any proceeds received</u> by way of . . . settlement." Compl. ¶ 11 (emphasis added). It also provides that Plan participants must "give <u>priority to the reimbursement of the Fund</u> in the allocation of the proceeds of any recovery." Id. (emphasis added). While the Plan does not expressly refer to the make-whole doctrine, its plain language, particularly the provision requiring participants to give priority to the Fund's reimbursement out of any settlement proceeds, indicates that participants have waived their right to be made whole. Cf. Moore v. CapitalCare, Inc., 461 F.3d 1, 10 (D.C. Cir. 2006) (make-whole doctrine was abrogated where plan provided, "Participant shall pay the Corporation all amounts recovered by suit, settlement, or otherwise from any third party or his insurer

6

to the extent of the benefits provided by this Contract").[3]

None of the cases Defendant cites in support of her motion persuade the Court to reach a different conclusion. In Barnes, the only case cited by the parties that is binding precedent, the Ninth Circuit considered a subrogation clause that provided:

> This plan may withhold payment of benefits when a party other than the employee or dependent may be liable for expenses until liability is legally determined. However, <u>if this plan makes payment</u> which the employee, dependent or any other party is or may be entitled to recover against any person or organization responsible for an accident or illness, <u>this Plan is subrogated to all rights of recovery to the extent of its payment</u>. The employee, dependent, or other person or organization <u>receiving payment from this Plan</u> shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights to the Plan, and shall do nothing either before or after payment by the Plan to prejudice such rights.

64 F.3d at 1393 (emphasis in Barnes). Crucially, the insurer had neither assisted the participant in obtaining recovery from the third party nor paid the participant any benefits under the plan -- the lawsuit was brought by the participant to obtain these benefits. Because the Barnes plan's clear language indicated that the insurer's right to subrogation arose only after it made payment to the insured, the insurer in Barnes had no right to subrogation at all, regardless of whether the make-whole doctrine would have applied if it had made such a payment. Id. Here, in contrast, the

---

[3] Defendant correctly notes that the Plan refers to an apparently separate agreement, to which participants "must agree in writing" as "a condition precedent to entitlement to benefits from the Fund." The Plan appears to ground the Fund's priority rights in that separate agreement, not in the Plan itself. Whether Defendant signed such an agreement is not clear from the complaint. If a fuller record demonstrates that no such agreement exists, Defendant may be able to move for summary judgment on this basis.

Plan contains no conditional language comparable to that in <u>Barnes</u> and, in any event, the Fund paid benefits to Defendant.

The <u>Barnes</u> court also addressed the significance of the plan's reference to "all rights of recovery." The court noted, "It is true that courts have upheld findings that a reference in a subrogation clause to 'any' or 'all' rights of recovery overrides the [make-whole] rule." <u>Id.</u> at 1396 (citing <u>Fields v. Farmers Ins., Co. Inc.</u>, 18 F.3d 831, 835-36 (10th Cir. 1994); <u>Cutting v. Jerome Foods, Inc.</u>, 993 F.2d 1293, 1299 (7th Cir. 1993)). However, the court distinguished these cases, as well as other state court cases, on the basis that the insurer in those cases had already paid benefits and, in some instances, had helped the insured pursue his or her claims against the third party. <u>Barnes</u>, 64 F.3d at 1396. The court concluded that "when the insurance company makes no payment to the injured insured for covered expenses, and places all the cost and risk of seeking recovery from a third party on the injured insured, the make-whole rule remains in place despite the 'all rights' language in the contract." <u>Id.</u>

Here, unlike in <u>Barnes</u>, the Fund paid Defendant benefits due under the Plan. In addition, the Plan language is significantly more specific than the "all rights" language in <u>Barnes</u>. The Plan gives the Fund an "automatic lien" on "any proceeds," requiring participants to give "a priority to the Fund's reimbursement" from the proceeds.

Defendant cites <u>Cagle v. Bruner</u>, 112 F.3d 1510 (11th Cir. 1997), in support of her position. In that case, the court addressed a subrogation clause that gave the insurer:

8

> the right to seek repayment from [a responsible third] party or his insurance company, or in the event [the plan participant] or [his] dependent recovers the amount of medical expense paid by the Fund by suit, settlement or otherwise from any third person or his insurer, . . . the right to be reimbursed therefor through subrogation.

Id. at 1521 (ellipsis in Cagle). The court held that the clause contains "standard subrogation language, which we think does not demonstrate a specific rejection of the make whole doctrine." Id. Here, in contrast, the Plan does not simply give the Fund a general "right to be reimbursed" from funds recovered by the participant. As discussed above, it is more specific in detailing the rights of the Fund: the Fund has an "automatic lien upon any recovery" obtained by the participant, as well as a priority in the allocation of the proceeds.[4]

It is true that the Cagle court stated, "An ERISA plan overrides the make whole doctrine only if it includes language specifically allowing the Plan the right of first reimbursement out of any recovery the participant was able to obtain even if the participant were not made whole." Id. at 1522. However, this Court does not interpret this statement to require that, in order to displace the make-whole doctrine, a plan must use the specific phrase, "even if the participant were not made whole." In any event, Barnes does not suggest that courts should take such a

---

[4]Likewise, the Plan language is more specific than that at issue in a district court case cited by Defendant, Providence Health System-Washington v. Bush, 461 F. Supp. 2d 1226 (W.D. Wash. 2006). There, the court held that the make-whole doctrine was not displaced by plan language stating, "If someone else is legally responsible or agrees to compensate you for injuries suffered, . . . you will need to reimburse the plan for up to 100% of any benefits the plan paid in connection with those injuries." Id. at 1234.

9

1  restrictive approach to contract interpretation.  The language in
2  the Plan is sufficiently clear to demonstrate that participants are
3  required to reimburse the Fund from settlement proceeds, even if
4  the proceeds did not make them whole.
5      In Copeland Oaks v. Haupt, 209 F.3d 811 (6th Cir. 2000), the
6  court addressed a plan provision that read:

> The Covered Person agrees to recognize the Plan's right to subrogation and reimbursement. These rights provide the Plan with a priority over <u>any</u> funds paid by a third party to a Covered Person relative to the Injury or Sickness, including a priority over any claim for non-medical or dental charges, attorney fees, or other costs and expenses.

11 Id. at 813 (emphasis in plan).  The Sixth Circuit found this
12 language insufficient to displace the make-whole rule.  It held
13 that, "in order for plan language to conclusively disavow the
14 default rule, it must be specific and clear in establishing <u>both</u> a
15 priority to the funds recovered <u>and</u> a right to any full or partial
16 recovery."  Id. (emphasis in original).  Because the plan provision
17 did not explicitly establish its priority over funds obtained in a
18 <u>partial</u> recovery, the court found that the make-whole rule applied.
19     If Copeland Oaks had been decided by the Ninth Circuit, it
20 would likely dictate that the make-whole rule applies to the
21 present case, because the Plan does not specifically refer to the
22 possibility of partial recovery.  However, Copeland Oaks is not
23 binding on this Court, and the Court declines to adopt a rule that
24 would require a plan to use specific "magic words" in order to
25 displace the make-whole doctrine.  Barnes does not contemplate such
26 an approach, and the Plan here unambiguously gives the Fund
27 priority to and an automatic lien on the settlement funds recovered
28                                  10

**United States District Court**
For the Northern District of California

by Defendant. The Court is constrained to give the Plan's language its plain meaning, and Defendant's motion to dismiss Plaintiff's ERISA claim is therefore denied.[5]

## II.  Plaintiff's Other Claims

Defendant also moves to dismiss Plaintiff's causes of action for unjust enrichment and imposition of a constructive trust. Under ERISA, a civil action may be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). In Pacificare Inc. v. Martin, 34 F.3d 834, 836 (9th Cir. 1994), the Ninth Circuit held that, absent a claim brought under § 1132(a)(3), ERSIA does not permit a plaintiff to assert an independent federal common law cause of action, such as unjust enrichment, to enforce the terms of an ERISA plan.

Thus, to the extent Plaintiff's third cause of action for unjust enrichment is brought pursuant to a federal common law right, it must be dismissed. In addition, imposition of a

---

[5] The Court notes that, even if the make-whole rule applied, Defendant still would not be entitled to dismissal at this stage of the litigation. On this motion to dismiss, the Court may not consider matters outside the pleadings, and the complaint in this case does not detail the nature or amount of Defendant's recovery. Thus, there is a factual issue concerning whether Plaintiff was made whole by the settlement. Nor can the Court turn to the decision in the parties' state-court lawsuit as a source of supplemental facts. Even though certain of those facts may not be in dispute, the Court may take judicial notice only of the existence of other court decisions, not of the facts contained therein. Lee, 250 F.3d at 690.

11

constructive trust is appropriately characterized as a remedy, not an independent cause of action. Thus, this cause of action must be dismissed as well. However, the Court construes the complaint as properly asserting an ERISA claim under § 1132(a)(3) based on a theory that Defendant would be unjustly enriched if the Plan were not enforced, and seeking either restitution or imposition of a constructive trust as an equitable remedy for such unjust enrichment. Plaintiff may proceed with this claim. See id. at 837-38; Chitikin v. Lincoln Nat'l Ins. Co., 879 F. Supp. 841, 851-53 (S.D. Cal. 1995).

CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is GRANTED IN PART and DENIED IN PART. Plaintiff's second and third causes of action are dismissed. This dismissal is with prejudice because these claims are barred by law, and thus amendment would be futile.[6] Plaintiff may proceed on its ERISA claim for equitable relief under 29 U.S.C. § 1132(c)(3). The hearing currently scheduled for January 31, 2008 is VACATED.

IT IS SO ORDERED.

Dated: 1/28/08

*Claudia Wilken*
CLAUDIA WILKEN
United States District Judge

---

[6] In any event, Plaintiff is not prejudiced by this dismissal because the substantive aspect of its third cause of action and the relief requested in its second cause of action are incorporated into its first cause of action.

12