IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES for the LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>    Plaintiff,<br><br>  v.<br><br>JEANNE L. HILL,<br><br>    Defendant.<br>_____/ | No. C 07-5849 CW<br><br>ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

Plaintiff Board of Trustees for the Laborers Health and Welfare Trust Fund for Northern California moves for summary judgment. Defendant Jeanne L. Hill opposes the motion.[1] The matter was heard on November 13, 2008. Having considered oral argument and all of the materials submitted by the parties, the Court grants Plaintiff's motion in part and denies it in part. Specifically, the Court grants summary adjudication on the issue of

---

[1] In the conclusion of her opposition brief, Defendant states for the first time that she intends to cross-move for summary judgment. This cross-motion was not properly noticed, and Defendant's brief did not purport to demonstrate the absence of triable issues of fact. In any event, because the Court rules against Defendant on the issue of liability and orders further proceedings with respect to remedies, any-cross motion is denied.

1 liability, and denies summary adjudication on the issue of
2 remedies.

## BACKGROUND

Plaintiff oversees the Laborers Health and Welfare Trust Fund (the Fund), which finances an employee benefit plan (the Plan) in which Defendant was a participant at all relevant times. On or about December 19, 2003, Defendant filed a complaint in state court charging her doctor with malpractice.[2] She alleged in the complaint that her doctor negligently perforated her bowel during a surgery. She further alleged that she "incurred, and [would] continue to incur, medical bills and specials for treatment received for the injuries [her doctor] ha[d] caused and failed to treat." Norris Dec. Ex. G. ¶ 7. Plaintiff paid $167,767 toward Defendant's medical costs as a result of complications arising from Defendant's surgery. Embry Dec. ¶ 7.[3]

The Plan provides that Defendant's benefits were subject to the following conditions:

---

[2] The Court takes judicial notice of the complaint, attached as exhibit G to the Norris Declaration, and of the existence of the allegations therein. The truth of those allegations -- of which, as Defendant notes, the Court may not take judicial notice -- is not relevant to the present action.

[3] Defendant's objection to the Embry Declaration is overruled. As Director of Benefits for the Fund, Mr. Embry is competent to testify as to the amount of benefits that were paid for Defendant's treatment. In addition, the declaration itemizes the benefits that were paid, and the records on which Mr. Embry's testimony is based are attached as exhibits. Defendant does not dispute the accuracy of the testimony or the records, but merely suggests that Mr. Embry cannot know whether the entire $167,767 was spent as a result of complications from Defendant's surgery. Defendant must create more than a mere metaphysical doubt in order to defeat Plaintiff's motion. See Matsushita Elec. Indus. Co. v. Zenith Radio, 475 U.S. 574, 586 (1986).

2

> If an Eligible Individual has an illness, injury, disease or other condition for which a third party may be liable or legally responsible by reason of an act or omission, or insurance coverage of such third party, the Fund will have an automatic lien upon any recovery against the third party for benefits paid by the Fund as a result of such illness, injury, disease or other condition. All Eligible Individuals, as a condition precedent to entitlement to benefits from the Fund, must agree in writing to reimburse the Fund for any payments made by the Fund on account of hospital, medical or other expenses in connection with, or arising out of, that injury, illness, disease or other condition. The reimbursement will be made out of any proceeds received by way of judgment, arbitration award, settlement or otherwise in connection with, or arising out of, any claim for a right to damages by the Eligible Individual against the third party, his insurance carrier, guarantor or other indemnitor, or by reason of uninsured or under-insured motorist coverage of the Eligible Individual, or any other source of third party recovery. The agreement will require all Eligible Individuals to prosecute the claim for damages diligently; to give priority to the reimbursement of the Fund in the allocation of the proceeds of any recovery, to cooperate and assist the fund [sic] in obtaining reimbursement for the payments, to execute any documents necessary to secure reimbursement; and to refrain from any act or omission that might hinder such reimbursement, and may contain any other provision as the Fund may reasonably require.

Embry Dec. Ex. B at 72.

Plaintiff did not, prior to paying benefits under the Plan, require that Defendant sign a reimbursement agreement of the type referred to in this provision. Rather, it sent her such an agreement shortly after it learned in June, 2004 that a third party might have caused her to incur the medical costs for which it paid. The next month, Defendant's attorney sent Plaintiff a letter explaining his client's position that Plaintiff had no right to reimbursement, and stating that he had instructed Defendant not to sign the reimbursement agreement.

In reality, Defendant did sign the reimbursement agreement,

3

apparently on the advice of her attorney. However, she never returned the signed agreement to Plaintiff, and never intended for Plaintiff to learn that she had signed it. Instead, she used the signed agreement as leverage in negotiations with her doctor to settle her malpractice lawsuit, in order to persuade the doctor to pay a larger sum. Norris Dec. Ex. B (Def.'s Dep.) at 57-59.[4]

In January, 2005, Defendant settled her lawsuit for $230,000. She characterizes the sum as representing compensation for her loss of income and for pain and suffering. She did not reimburse the Fund for the sum it paid toward her medical expenses because, according to her, the settlement did not include compensation for medical costs. Instead, she used the money to pay off her mortgage, her credit card and a personal loan; to purchase a car; and to serve as part of the down payment on a new home.

Plaintiff brought this action pursuant to the Employment Retirement Income Security Act (ERISA), which permits a plan fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3).

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and

---

[4] Defendant's counsel maintains that he explained during the settlement negotiations that an equitable lien was being asserted by Plaintiff, but that its validity was in doubt.

4

disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Eisenberg v. Ins. Co. of N. Am., 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material. Celotex, 477 U.S. at 324; Eisenberg, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Intel Corp. v. Hartford Accident & Indem. Co., 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

Where the moving party does not bear the burden of proof on an issue at trial, the moving party may discharge its burden of production by either of two methods:

> The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial.

5

1  Nissan Fire & Marine Ins. Co., Ltd., v. Fritz Cos., Inc., 210 F.3d
2  1099, 1106 (9th Cir. 2000).

3   If the moving party discharges its burden by showing an
4  absence of evidence to support an essential element of a claim or
5  defense, it is not required to produce evidence showing the absence
6  of a material fact on such issues, or to support its motion with
7  evidence negating the non-moving party's claim.  Id.; see also
8  Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871, 885 (1990); Bhan v.
9  NME Hosps., Inc., 929 F.2d 1404, 1409 (9th Cir. 1991).  If the
10 moving party shows an absence of evidence to support the non-moving
11 party's case, the burden then shifts to the non-moving party to
12 produce "specific evidence, through affidavits or admissible
13 discovery material, to show that the dispute exists."  Bhan, 929
14 F.2d at 1409.

15  If the moving party discharges its burden by negating an
16 essential element of the non-moving party's claim or defense, it
17 must produce affirmative evidence of such negation.  Nissan, 210
18 F.3d at 1105.  If the moving party produces such evidence, the
19 burden then shifts to the non-moving party to produce specific
20 evidence to show that a dispute of material fact exists.  Id.

21  If the moving party does not meet its initial burden of
22 production by either method, the non-moving party is under no
23 obligation to offer any evidence in support of its opposition.  Id.
24 This is true even though the non-moving party bears the ultimate
25 burden of persuasion at trial.  Id. at 1107.

26  Where the moving party bears the burden of proof on an issue
27 at trial, it must, in order to discharge its burden of showing that

6

1  no genuine issue of material fact remains, make a prima facie
2  showing in support of its position on that issue.  UA Local 343 v.
3  Nor-Cal Plumbing, Inc., 48 F.3d 1465, 1471 (9th Cir. 1994).  That
4  is, the moving party must present evidence that, if uncontroverted
5  at trial, would entitle it to prevail on that issue.  Id.  Once it
6  has done so, the non-moving party must set forth specific facts
7  controverting the moving party's prima facie case.  UA Local 343,
8  48 F.3d at 1471.  The non-moving party's "burden of contradicting
9  [the moving party's] evidence is not negligible."  Id.  This
10 standard does not change merely because resolution of the relevant
11 issue is "highly fact specific."  Id.

                              DISCUSSION

I.   Liability

The unambiguous language of the Plan compels the conclusion that the Fund had an automatic lien in the amount of $167,767 against the proceeds Defendant received in exchange for dismissing her malpractice lawsuit.  Defendant correctly notes that the second, third and fourth sentences of the relevant Plan provision refer, not to obligations imposed by the Plan itself, but to promises that were to be contained in a separate agreement.  She argues that, because the provisions referring to "reimbursement" are all specified as being governed by the separate agreement, and because she never entered into any such agreement, she is not required to reimburse Plaintiff.  However, even accepting that Defendant did not agree to reimburse Plaintiff, the first sentence of the provision, which does not refer to a separate agreement, provides that the Fund will have an automatic lien upon any

7

recovery by Defendant against a third party.  Whether or not the parties entered into a separate reimbursement agreement is therefore not relevant to the existence of the automatic lien.

    Defendant asks the Court to reconsider its decision that the "make-whole doctrine" does not apply to Plaintiff's claim.  The make-whole doctrine is a default rule of contractual interpretation which provides that, "absent an agreement to the contrary, an insurance company may not enforce a right to subrogation until the insured has been fully compensated for her injuries, that is, has been made whole."  Barnes v. Indep. Auto. Dealers Ass'n of Cal. Health and Welfare Benefit Plan, 64 F.3d 1389, 1394 (9th Cir. 1995).  The Court previously found that the Plan gives the Fund first priority to, and creates an automatic lien on, any recovery by Defendant from a third party for benefits paid by the Fund.  In doing so, the Court found, the Plan displaces the make-whole doctrine.  Defendant now argues that, because the word "priority" appears only in a sentence describing promises that will be made in a separate agreement, the lien itself was not clearly given first priority to any recovery, and thus the make-whole rule should apply.  The Court is not persuaded by this argument.  The concept of an automatic lien on specific funds carries with it a clear implication that the lien-holder has a right to the funds superior to that of the holder of the funds.  In addition, the provision, taken as a whole, plainly communicates that Plaintiff intended its right to settlement proceeds -- whether obtained by operation of the automatic lien or a separate reimbursement agreement -- to be given first priority.  Accordingly, there is no need to resort to

8

the gap-filling make-whole doctrine to determine the priority that should be given to the lien.[5]

Defendant also argues that Plaintiff must prove that the $167,767 in benefits was paid as a result of her doctor's negligence. It is not clear what Defendant means by this. To the extent she maintains that Plaintiff must prove that her doctor was negligent, the argument is not well taken. Defendant clearly believed she lost wages, incurred medical costs and experienced pain and suffering as a result of her doctor's negligence; she filed a lawsuit alleging as much and obtained $230,000 to settle it. Defendant cannot now take the position that she did not obtain the settlement proceeds as a result of her doctor's negligence, and to require Plaintiff to prove her now-settled claim against her doctor would be nonsensical. To the extent Defendant intends to challenge the evidence supporting Plaintiff's contention that it paid $167,767 for medical costs incurred as a result of complications from Defendant's surgery, her argument is a restatement of the objection the Court overruled above. In addition, in a sworn declaration filed in the malpractice action, Defendant herself testified that she incurred $397,626 in medical costs as a result of her doctor's negligence, of which the Fund paid approximately $167,000. Supp. Norris Dec. Ex. C ¶ 5.[6] She is

---

[5]Even if the make-whole rule applied, it is not clear from the record before the Court that Plaintiff was not made whole by her settlement. Accordingly, if the rule applied, it would not mandate summary judgment against Plaintiff.

[6]The Court takes judicial notice of the declaration. Defendant initially objected to the declaration on the basis that it was not properly authenticated, even though she did not actually

9

estopped from asserting otherwise in this action. See New Hampshire v. Maine, 532 U.S. 742, 749 (2001) ("Where a party assumes a certain position in a legal proceeding, and succeeds in maintaining that position, he may not thereafter, simply because his interests have changed, assume a contrary position . . . .")

For these reasons, the Court concludes that Plaintiff is liable under ERISA for violating the terms of the Plan.[7]

## II. Remedies

Under ERISA, a Court may order only equitable relief for violations of the terms of a plan. See 29 U.S.C. § 1132(a)(3). As a remedy for Defendant's violation of the Plan, Plaintiff seeks a general order of restitution and imposition of a constructive trust on her assets. However, as explained below, an order that restitution be made in a specific amount from Plaintiff's general assets would not be equitable in nature, and thus is not permitted under ERISA. In addition, although imposition of a constructive trust or an equitable lien on specific assets may be possible, the matter has not been adequately briefed and there are outstanding factual issues that must be resolved before any such remedy may be ordered.

---

dispute the authenticity of the declaration itself. The objection is rendered moot by the supplemental Norris declaration, which attaches a copy of the declaration that has been certified by the state court.

[7] Plaintiff also maintains that Defendant is obliged to reimburse it pursuant to the terms of the separate agreement. However, Plaintiff cannot base an ERISA claim on the agreement; ERISA provides a cause of action only to enforce the terms of a plan. 29 U.S.C. § 1132(a)(3)(ii). Any claim to enforce the terms of the agreement would be for breach of contract, and Plaintiff does not assert a contract claim in this action.

10

In <u>Great-West Life & Annuity Ins. Co. v. Knudson</u>, 534 U.S. 204 (2002), the Supreme Court considered an action in which the plaintiffs sought what was characterized as equitable restitution for an ERISA plan participant's failure to comply with the plan's reimbursement provision. In addressing the nature of the remedy sought, the Court stated:

> [N]ot all relief falling under the rubric of restitution is available in equity. In the days of the divided bench, restitution was available in certain cases at law, and in certain others in equity. Thus, restitution is a legal remedy when ordered in a case at law and an equitable remedy when ordered in an equity case, and whether it is legal or equitable depends on the basis for the plaintiff's claim and the nature of the underlying remedies sought.
>
> In cases in which the plaintiff could not assert title or right to possession of particular property, but in which nevertheless he might be able to show just grounds for recovering money to pay for some benefit the defendant had received from him, the plaintiff had a right to restitution at law . . . . In such cases, the plaintiff's claim was considered legal because he sought to obtain a judgment imposing a merely personal liability upon the defendant to pay a sum of money. Such claims were viewed essentially as actions at law for breach of contract (whether the contract was actual or implied).
>
> In contrast, a plaintiff could seek restitution in equity, ordinarily in the form of a constructive trust or an equitable lien, where money or property identified as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession. A court of equity could then order a defendant to transfer title (in the case of the constructive trust) or to give a security interest (in the case of the equitable lien) to a plaintiff who was, in the eyes of equity, the true owner. But where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor, and the plaintiff cannot enforce a constructive trust of or an equitable lien upon other property of the defendant. Thus, for restitution to lie in equity, the action generally must seek not to impose personal liability on the defendant, but to restore to the plaintiff particular funds or property in the defendant's possession

11

Id. at 213-14 (citations and internal quotation marks omitted).

The funds to which the plaintiffs in Great-West claimed an entitlement under the plan's reimbursement provision -- the proceeds from the settlement of the defendants' tort action -- were not in the defendants' possession or under their control, but rather had been placed in a "Special Needs Trust" under California law.  Because satisfaction of any restitution order would therefore have to be made from the defendants' general assets, the kind of restitution the plaintiffs sought was "not equitable -- the imposition of a constructive trust or equitable lien on particular property -- but legal -- the imposition of personal liability for the benefits that they conferred upon" the defendants.  Id. at 214.

Under Great-West, the Court may not order restitution from Defendant in the form of an order requiring her to make a monetary payment to Plaintiff.  Doing so would be tantamount to awarding Plaintiff compensatory damages, and thus would be an essentially legal remedy that is not permitted under ERISA.  However, the Court may impose a remedy that is directed to "particular funds or property in . . . [D]efendant's possession" that can "clearly be traced" to "money . . . identified as belonging in good conscience" to Plaintiff.  Id. at 213.

In Sereboff v. Mid Atlantic Medical Services, Inc., 547 U.S. 356 (2006), the Supreme Court addressed an ERISA plan participant's liability under a subrogation provision similar to the one at issue here and in Great-West.  The Sereboff Court affirmed that "one feature of equitable restitution [is] that it [seeks] to impose a constructive trust or equitable lien on 'particular funds or

12

property in the defendant's possession.'" Id. at 362 (quoting Great-West, 534 U.S. at 213). The Court further noted:

> [The] impediment to characterizing the relief in [Great-West] as equitable is not present here. . . . [I]n this case Mid Atlantic sought specifically identifiable funds that were within the possession and control of the Sereboffs -- that portion of the tort settlement due Mid Atlantic under the terms of the ERISA plan, set aside and preserved in the Sereboffs' investment accounts. Unlike Great-West, Mid Atlantic did not simply seek "to impose personal liability . . . for a contractual obligation to pay money." Great-West, 534 U.S. at 210. It alleged breach of contract and sought money, to be sure, but it sought its recovery through a constructive trust or equitable lien on a specifically identified fund, not from the Sereboffs' assets generally, as would be the case with a contract action at law. ERISA provides for equitable remedies to enforce plan terms, so the fact that the action involves a breach of contract can hardly be enough to prove relief is not equitable; that would make § 502(a)(3)(B)(ii) an empty promise. This Court in [Great-West] did not reject Great-West's suit out of hand because it alleged a breach of contract and sought money, but because Great-West did not seek to recover a particular fund from the defendant. Mid Atlantic does.

Id. at 362-63 (additional citation and internal quotation marks omitted). Accordingly, the Court affirmed the judgment against the defendants.

Here, unlike in Sereboff, the proceeds from Defendant's settlement have not been preserved in an account that has been segregated from her other assets. In Defendant's view, the funds are no longer "specifically identifiable," and therefore it is not possible to impose a constructive trust. However, the settlement proceeds comprised specific funds on which Plaintiff had a lien in the amount of $167,767. Plaintiff therefore was, "in the eyes of equity, the true owner" of $167,767 of the settlement proceeds. Great-West, 534 U.S. at 213. So long as Plaintiff seeks an equitable lien or constructive trust on the product of these funds,

13

and not an order that Defendant pay it $167,767 from her assets generally, the remedy is equitable in nature. The fact that the settlement proceeds are no longer set aside is not necessarily a bar to granting equitable relief, because the Court may impose a constructive trust or an equitable lien on specific property that can be traced to the proceeds. See id.; Restatement (First) of Restitution §§ 202-15. Although a lien or trust is not available to the extent the funds have been "dissipated so that no product remains," Great-West, 534 U.S. at 215, it does not appear that funds held in a constructive trust are "dissipated" when they are used to purchase property that remains in the possession of the trustee, even if the funds are first commingled with the trustee's assets. See Restatement §§ 209-12. To the extent property is "traceable back to the ill-gotten profits," it is properly subject to a constructive trust or an equitable lien. Stanton v. Couturier, 2007 WL 4570699, at *3 (E.D. Cal.); see also Great-West, 534 U.S. at 213.

Plaintiff has not attempted to demonstrate that specific property in Defendant's possession is traceable back to its portion of the settlement proceeds. Instead, Plaintiff argues that the Court need not adhere to any tracing rules, but rather may impose an equitable lien on Plaintiff's property generally. Plaintiff's position is based on a passage from the Supreme Court's decision in Sereboff:

> The Sereboffs object that Mid Atlantic's suit would not have satisfied the conditions for "equitable restitution" at common law, particularly the "strict tracing rules" that allegedly accompanied this form of relief. When an equitable lien was imposed as restitutionary relief, it

14

> was often the case that an asset belonging to the plaintiff had been improperly acquired by the defendant and exchanged by him for other property. A central requirement of equitable relief in these circumstances, the Sereboffs argue, was the plaintiff's ability to trace the asset into its products or substitutes, or trace his money or property to some particular funds or assets.
>
> But as the Sereboffs themselves recognize, an equitable lien sought as a matter of restitution, and an equitable lien "by agreement," of the sort at issue in Barnes v. Alexander, 232 U.S. 117 (1914), were different species of relief. Barnes confirms that no tracing requirement of the sort asserted by the Sereboffs applies to equitable liens by agreement or assignment: The plaintiffs in Barnes could not identify an asset they originally possessed, which was improperly acquired and converted into property the defendant held, yet that did not preclude them from securing an equitable lien. To the extent Mid Atlantic's action is proper under Barnes, therefore, its asserted inability to satisfy the "strict tracing rules" for "equitable restitution" is of no consequence.

Id. at 364-65 (citations and internal quotation marks omitted).

This passage discusses a species of restitution that is not at issue in the present case: imposition of an equitable lien when "an asset belonging to the plaintiff is improperly acquired by the defendant and exchanged by him for other property." Id. at 364. The tracing to which the Court referred in Sereboff is different from the tracing that Plaintiff must demonstrate here. The defendants in Sereboff had argued:

> MAMSI's claim is not for return of particular money that the Plan paid to the Sereboffs and that the Sereboffs still retain. Any money that the Plan paid on behalf of the Sereboffs has already been spent on legitimate medical expenses. What MAMSI is seeking, therefore, is not the return of Plan money or profits from its use or exchange. Rather, MAMSI is seeking to recover new money paid out by third parties, the alleged tortfeasors.

Pet'rs' Reply Br. in Sereboff, available at 2006 WL 717048. In finding that "strict tracing rules" did not apply, the Court simply

15

rejected the defendants' argument that the plaintiff was required to show that the funds as to which an equitable lien was sought were identical to or were the product of the funds that were originally obtained from the plaintiff. Defendant here does not make such an argument, and thus the passage has no application to this case. Nothing in Sereboff's discussion of tracing suggests that, once specific funds are subject to an equitable lien, the lien may be transferred to any of the fund-holder's property, without regard to how the original funds were disposed of. Doing so would be contrary to Great-West. Nor does Sereboff suggest that the Court need not be "strict" in its approach to determining what property is the product of Defendant's settlement proceeds.

Plaintiff has not demonstrated with any degree of specificity how the settlement proceeds were used. Although it cited Defendant's deposition testimony that she used the funds for various purposes, this testimony is vague and brief, and is not adequate to permit the Court to impose a constructive trust or an equitable lien in an amount certain on any of her property. Plaintiff must show with specificity how the settlement funds were disposed of, and must demonstrate that the remedy it seeks is available under established principles of equitable restitution. See generally Restatement §§ 160-61, 202-15.[8]

CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary

---

[8] If Plaintiff contends that a lien should be imposed on the portion of the settlement proceeds that was withheld by Defendant's attorneys as their compensation for representing Defendant in the malpractice action, it must demonstrate a legal basis for doing so.

16

judgment is GRANTED IN PART and DENIED IN PART.[9]  The Court finds that Defendant is liable to Plaintiff under ERISA, but orders further proceedings with respect to remedies.  As stated at the hearing, Plaintiff shall file a second motion for summary judgment on the issue of remedies by December 11, 2008.  Defendant shall file an opposition by January 8, 2009.  Plaintiff shall file a reply by January 15, 2009.  The matter will be heard on January 29, 2009.  If further discovery would obviate the need for a trial, the parties may stipulate to, or move for, reopening discovery and rescheduling the additional summary judgment proceedings.

IT IS SO ORDERED.

Dated: 11/25/08

_____
CLAUDIA WILKEN
United States District Judge

---

[9] Any evidentiary objection that was not discussed in this order is overruled as moot because the evidence in question was not material to the Court's decision.

17