IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BOARD OF TRUSTEES for the LABORERS HEALTH AND WELFARE TRUST FUND FOR NORTHERN CALIFORNIA,<br><br>    Plaintiff,<br><br>  v.<br><br>JEANNE L. HILL,<br><br>    Defendant.<br>_____/ | No. C 07-5849 CW<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF REMEDIES |

    Plaintiff Board of Trustees for the Laborers Health and Welfare Trust Fund for Northern California moves for summary judgment on the issue of remedies.  Defendant Jeanne L. Hill opposes the motion.  The matter was heard on January 29, 2009. Having considered oral argument and all of the materials submitted by the parties, the Court grants Plaintiff's motion.

BACKGROUND

    Plaintiff oversees the Laborers Health and Welfare Trust Fund (the Fund), which finances an employee benefit plan (the Plan) in which Defendant was a participant at all relevant times.  On or about December 19, 2003, Defendant filed a complaint in state court charging her doctor with malpractice.  She alleged in the complaint

that her doctor negligently perforated her bowel during a surgery. Plaintiff paid $167,767 toward Defendant's medical costs as a result of complications arising from Defendant's surgery.

The Plan provides, "If an Eligible Individual has an illness, injury, disease or other condition for which a third party may be liable or legally responsible by reason of an act or omission, or insurance coverage of such third party, the Fund will have an automatic lien upon any recovery against the third party for benefits paid by the Fund as a result of such illness, injury, disease or other condition." Embry Dec. (Docket No. 31) Ex. B at 72. In January, 2005, Defendant settled her lawsuit for $230,000. She did not reimburse the Fund for the sum it paid toward her medical expenses.

Plaintiff brought this action pursuant to the Employment Retirement Income Security Act (ERISA), which permits a plan fiduciary to bring a civil action "(A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan." 29 U.S.C. § 1132(a)(3). On November 25, 2008, the Court granted Plaintiff's motion for summary judgment on the issue of liability, holding that Plaintiff was entitled to an equitable lien on Defendant's property to the extent the settlement proceeds could be traced to the property. At the Court's direction, Plaintiff filed the present motion for summary judgment on the tracing issue, asserting that the proceeds can indeed be traced to specific property.

2

## LEGAL STANDARD

Summary judgment is properly granted when no genuine and disputed issues of material fact remain, and when, viewing the evidence most favorably to the non-moving party, the movant is clearly entitled to prevail as a matter of law. Fed. R. Civ. P. 56; <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986); <u>Eisenberg v. Ins. Co. of N. Am.</u>, 815 F.2d 1285, 1288-89 (9th Cir. 1987).

The moving party bears the burden of showing that there is no material factual dispute. Therefore, the court must regard as true the opposing party's evidence, if it is supported by affidavits or other evidentiary material. <u>Celotex</u>, 477 U.S. at 324; <u>Eisenberg</u>, 815 F.2d at 1289. The court must draw all reasonable inferences in favor of the party against whom summary judgment is sought. <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986); <u>Intel Corp. v. Hartford Accident & Indem. Co.</u>, 952 F.2d 1551, 1558 (9th Cir. 1991).

Material facts which would preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. The substantive law will identify which facts are material. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986).

## DISCUSSION

The parties appear to agree that there is no dispute of material fact concerning the disposition of the settlement proceeds that Defendant received from the settlement of her malpractice suit. Accordingly, the existence and amount of any equitable lien

3

can be determined as a matter of law.

Specifically, the parties agree that Defendant received $148,960 (after attorneys' fees) from the settlement. She used $123,708 of these funds, which equitably belonged to the Fund, to pay off the mortgages on her house in Redding, California. She dispersed the rest of the money. The house was worth $270,000 at the time she paid off her mortgages. She later sold the house for $260,000. With the proceeds, she repaid a $6,000 loan to her sister, bought an automobile for $26,725 and used the rest towards the purchase of a condominium in Washington for $270,000.[1] The condominium is now worth $235,000.

Based on these facts, the Court concludes that Plaintiff has an equitable lien in the amount of $123,708 that can be enforced both against Defendant's condominium and her vehicle. Defendant converted $123,708 of the Fund's money into an equivalent amount of equity in the Redding house. At that point, Plaintiff's equity was commingled with Defendant's equity. Neither party cites any authority addressing how to deal with the $10,000 depreciation of the house. However, the Restatement of Restitution indicates that, if a commingled fund -- or property that is purchased with a commingled fund -- diminishes in value, the party whose funds were wrongfully taken is entitled to an equitable lien in the entire amount of his or her original contribution. See Restatement (First) of Restitution § 210, comments c and d. When the Redding house was sold, Plaintiff thus had an equitable lien on the

---

[1] It is not clear whether the remainder of the money for the purchase came from a mortgage or from some other source.

4

$260,000 proceeds in the amount of $123,708.  Defendant's dissipation of $6,000 of this fund in the form of a loan to her sister did not reduce the amount of the lien.  See Restatement § 211, comment b ("If a wrongdoer deposits in a single account in a bank money belonging to another and money belonging to himself, and subsequently withdraws and dissipates a part of the deposit, the claimant is entitled to an equitable lien for the amount of his money upon the balance of the account, or if the balance is subsequently withdrawn, upon its product if it can be traced.")  The rest of the commingled fund was used to purchase Defendant's automobile and her condominium in Washington.  Because both pieces of property can be traced to the fund, Plaintiff may assert its $123,708 lien against either or both of them.  See Restatement §§ 210 and 211, comment c.

Plaintiff has agreed that, if the Court is not persuaded that it has traced $123,708 to Defendant's property, it is "willing to stipulate to an equitable lien on Hill's home in the approximate amount of $80,000 solely for purposes of avoiding a trial on the matter and without waiving its right to attempt to trace the full amount of its lien in the event that a trial becomes necessary."  Plaintiff reaches the compromise figure by making several concessions to Defendant.  First, Plaintiff's compromise calculation assumes that the parties bore equally the depreciation of both the Redding home and the Washington condominium, and assigns equity on a percentage basis.  Under this theory, the Fund owned 45.82 percent of the Redding home ($123,708 ÷ $270,000), and thus was entitled to $119,132 of the proceeds from the home's sale

5

(0.4582 x $260,000). Plaintiff's compromise theory also assumes that Defendant used only Plaintiff's share of the proceeds from the sale of the Redding house to buy her vehicle and to pay off her debt to her sister, leaving Plaintiff with $86,407 that was put into the Washington condominium ($119,132 - $26,725 - $6,000).[2] Under this theory, Plaintiff thus owns 32.00 percent of the condominium ($86,407 ÷ $270,000), which corresponds to $75,206[3] at the condominium's current value (0.3200 x $235,000).

Defendant agrees that approximately $75,000 of the settlement proceeds can be traced to the condominium and argues that the Court should accept Plaintiff's compromise offer to accept a lien in the amount of $80,000. However, there is no reason to hold Plaintiff to its compromise offer, which it made only for the purpose of avoiding trial if the Court determined that a lien in the full amount of $123,708 could not be established as a matter of law. As noted, there are no factual disputes concerning the disposition of the settlement proceeds, and the matter can be resolved on summary judgment. There is no need to compromise to avoid a trial.

Furthermore, no authority requires the concessions embodied in the compromise. There are certain circumstances that would call for the compromise theory's approach of assigning ownership of specific property on a percentage basis. The Restatement indicates

---

[2] Plaintiff forgets to subtract the $6,000 loan in its calculation, leaving it with the erroneous figure of $92,407.

[3] The $75,206 calculated by the Court under Plaintiff's alternate method of tracing is less than the $80,000 figure derived by Plaintiff because, as noted, Plaintiff failed to deduct the $6,000 loan from the proceeds of the sale of the Redding home.

that, where the defendant is a conscious wrongdoer, the plaintiff may, at his or her option, seek a constructive trust over his or her proportionate share of any property that is purchased with commingled funds. Restatement § 211(2). A constructive trust differs from an equitable lien in that the former gives the party a proportionate share of ownership of specific property that can be traced to the ill-gotten proceeds, whereas the latter gives the party a lien in an amount certain that can be enforced against that property. A constructive trust is the preferred remedy if a portion of commingled funds are used to purchase property that appreciates in value. <u>See</u> Restatement § 211, comment d. Here, if Plaintiff could establish that Defendant was a conscious wrongdoer, it would be possible to impose a constructive trust on the condominium and the automobile, deeming Plaintiff to own 45.82 percent of each. However, courts will only impose a constructive trust at the plaintiff's option. Because the condominium and the automobile have both diminished in value, Plaintiff's preferred remedy is an equitable lien. And in any event, there is no basis for the compromise theory's assumption that Defendant used only Plaintiff's share of the commingled $260,000 fund to purchase the automobile and pay off the loan.

 The Court concludes that Plaintiff has traced $123,708 to Defendant's condominium and automobile, and therefore is entitled to an equitable lien in this amount that can be enforced against either or both properties.

## CONCLUSION

 For the foregoing reasons, Plaintiff's motion for summary

7

judgment (Docket No. 42) is GRANTED.  Within five days of the date of this order, after seeking Defendant's approval as to form, Plaintiff shall lodge a proposed judgment conforming to the terms of this order.  If necessary, Defendant may file an objection to Plaintiff's form of judgment two days thereafter.

IT IS SO ORDERED.

Dated: 3/23/09

*Claudia Wilken*

CLAUDIA WILKEN
United States District Judge